IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ADENIKE MATTHEW-AJAYI, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No.  ADC-23-3035 |
| | * | |
| AIRBNB, INC., | * | |
| | * | |
| Defendant. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Defendant Airbnb, Inc. ("Airbnb") moves this Court to compel arbitration of all claims brought by Plaintiff Adenike Matthew-Ajayi ("Plaintiff"), pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., or, in the alternative, for dismissal of Plaintiff's Amended Complaint (ECF No. 15) for lack of personal jurisdiction. ECF No. 16. After considering the Motion and the responses thereto (ECF Nos. 16, 22, 27), the Court finds that no hearing is necessary.[1] See Loc.R. 105.6 (D. Md. 2023). For the reasons stated herein, the Court DENIES Defendant's Motion.

### FACTUAL AND PROCEDURAL BACKGROUND

This lawsuit arises out of injuries that Plaintiff allegedly sustained while staying at an accommodation that her sister, Ade Olatunde ("Ms. Olatunde"), booked through Airbnb's online marketplace. ECF No. 15. In the fall of 2022, Ms. Olatunde booked an Airbnb ("the Property") in Medellin, Columbia from Jessup, Maryland. Id. at ¶ 17. Ms. Olatunde invited a number of guests, including Plaintiff, to join her at the Property in November to celebrate Ms. Olatunde's birthday.

---

[1] On November 8, 2023, this case was assigned to United States Magistrate Judge A. David Copperthite for all proceedings in accordance with Standing Order 2019-07. ECF No. 3. All parties voluntarily consented in accordance with 28 U.S.C. § 636(c). ECF No. 14.

*Id.* at ¶ 19. Plaintiff traveled to the Property, and alleges that, on or about November 20, 2022, she fell down the stairs at the Property and injured her ankle. *Id.* at ¶¶ 20–21. Plaintiff further alleges that, due to her injuries, she left Columbia two days later and was hospitalized in Maryland. *Id.* at ¶¶ 24–25. Plaintiff was diagnosed with three fractures, and she underwent foot surgery on November 23, 2022. *Id.* at ¶¶ 25–26.

While Plaintiff did not book the Property, she had previously created an Airbnb account on January 18, 2022. ECF Nos. 16-1 at 3, 16-2 at ¶ 12. In creating the account, Plaintiff was required to read Airbnb's Terms of Service, which included language stating that: "Section 23 of these Terms contains an arbitration agreement and class action waiver that apply to all claims brought against Airbnb in the United States. Please read them carefully." ECF No. 16-2 at ¶ 24. Section 23 stated:

> **23.4 Agreement to Arbitrate. You and Airbnb mutually agree that any dispute, claim or controversy arising out of or relating to these Terms or the applicability, breach, termination, validity, enforcement or interpretation thereof, or any use of the Airbnb Platform, Host Services, or any Content (collectively, "Disputes") will be settled by binding individual arbitration (the "Arbitration Agreement"). If there is a dispute about whether this Arbitration Agreement can be enforced or applies to our Dispute, you and Airbnb agree that the arbitrator will decide that issue.**

ECF No. 16-13 (bold in original).

Plaintiff filed suit in this Court on November 8, 2023, alleging negligence and a violation of the Maryland Consumer Protection Act. ECF No. 1. On January 12, 2024, Plaintiff filed an Amended Complaint. ECF No. 15. On January 26, 2024, Defendants filed its Motion to Compel Arbitration and to Dismiss for Lack of Personal Jurisdiction. ECF No. 16. After an extension of time, Plaintiff filed a Response in Opposition on March 5, 2024 (ECF No. 22), to which Airbnb replied on March 26, 2024. (ECF No. 27).

## DISCUSSION

Airbnb first argues that Plaintiff's claims are subject to mandatory arbitration. "The standard of review on a motion to compel arbitration under the [FAA] is 'akin to the burden on summary judgment.'" *Taccino v. Ford Motor Co.*, No. GLR-18-913, 2019 WL 1429263, at *3 (D. Md. Mar. 29, 2019) (quoting *Novic v. Midland Funding, LLC*, 271 F.Supp.3d 778, 782 (D. Md. 2017)); *see also Vinjarapu v. Gadiyaram*, No. ADC-19-3306, 2020 WL 1170613, at *3, (D.Md. Mar. 11, 2020). Pursuant to Rule 56, a movant is entitled to summary judgment where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine dispute as to any material fact. Fed.R.Civ.P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

In determining whether a genuine issue of material fact exists, the court views the facts and draws all reasonable inferences in the light most favorable to the nonmoving party. *Glynn v. EDO Corp.*, 710 F.3d 209, 213 (4th Cir. 2013) (citing *Bonds v. Leavitt*, 629 F.3d 369, 380 (4th Cir. 2011)). A genuine issue of material fact exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Res. Bankshares Corp. v. St. Paul Mercury Ins. Co.*, 407 F.3d 631, 635 (4th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). Thus, "to grant summary judgment the [c]ourt must determine that no reasonable jury could find for the nonmoving party on the evidence before it." *Moss v. Parks Corp.*, 985 F.2d 736, 738 (4th Cir. 1993) (quoting *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 124 (4th Cir. 1990)). "In the context of a motion to compel arbitration under the FAA, 'the party seeking a jury trial must make an unequivocal denial that an arbitration agreement exists— and must also show sufficient facts in support.'" *Taccino*, 2019 WL 1429263, at *3 (quoting *Chorley Enters., Inc. v. Dickey's Barbecue Rests., Inc.*, 807 F.3d 553, 564 (4th Cir. 2015)).

3

Airbnb argues that Plaintiff's claims are subject to mandatory arbitration because: (1) Plaintiff consented to Airbnb's Terms of Service, including its mandatory arbitration agreement, when she created her own Airbnb account on a separate occasion and (2) Plaintiff is bound by Ms. Olatunde's consent to Airbnb's Terms of Service, including the arbitration agreement, through general principles of agency and estoppel.

Airbnb's first argument is unconvincing. "It is well settled in both commercial and labor cases that whether parties have agreed to 'submi[t] a particular dispute to arbitration' is typically an 'issue for judicial determination.'" *Granite Rock Co. v. International Broth. of Teamsters*, 561 U.S. 287, 296 (2010) (internal quotations removed) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002). Further, an arbitration agreement is tied to the underlying contract containing it and is enforced "only where a dispute has its real source in the contract. The object of an arbitration clause is to implement a contract, not transcend it." *Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 205 (1991). Courts do not send a matter to arbitration merely because the same parties agreed to arbitrate a different matter. *See Moritz v. Universal City Studios LLC*, 54 Cal.App.5th 238, 246 (Cal. Ct. App. 2020).

Here, Plaintiff's claims have no relationship with the agreement that she signed with Airbnb on January 18, 2022. She did not utilize her account to book the Property where the accident allegedly took place—she simply stayed as a guest at a house that her sister had rented pursuant to *her sister's agreement* with Airbnb. Because Plaintiff was not a participant in booking the Property, she cannot be required to arbitrate her claims. *See Peterson v. Devita*, No. 1-23-0356, 2023 IL App (1st) 230356, *5 (Ill. App. Ct. Sept. 22, 2023) ("[An] arbitration provision should apply only when the claims arise from a plaintiff's use of the Airbnb platform and not on the fortuity of a plaintiff having created an account…A contract—and not fate—dictates

arbitrability."). Because the Court finds that no binding arbitration agreement exists in this matter, it need not address Airbnb's arguments as to whether Plaintiff's claims fall within the scope of the purported agreement. *See* ECF No. 16-1 at 23–24.

Alternatively, Airbnb argues that Ms. Olatunde acted as Plaintiff's agent when she booked the Property, thereby binding Plaintiff to an arbitration agreement. *See id.* at 17–18. Airbnb contends that "a non-signatory principal may be compelled to arbitration where its agent signed an arbitration agreement and the non-signatory principal's claims arise out of that agency relationship." *Id.* at 17. In making this argument, Airbnb presupposes that an agency relationship existed between Plaintiff and Ms. Olatunde.

"In an agency relationship…the principal, can be legally bound by actions taken by another person, the agent. An agency relationship is created when the principal confers actual authority on the agent." *Dickerson v. Longoria*, 414 Md. 419, 442 (2010). A principle may either expressly or impliedly designate an agent to act on his behalf, and an agent's power to bind the principal will be confined by the authority that the principal has granted to the agent. *See Jackson v. 2109 Brandywine, LLC*, 180 Md.App. 535, 565 (Md. Ct. Spec. App. 2008); *Dickerson*, 414 Md. at 442. Here, Airbnb asserts that Ms. Olatunde acted with actual authority on Plaintiff's behalf when she booked the Property and cites *Hofer v. Gap, Inc.*, 516 F. Supp. 2d 161, 174–76 (D. Mass. 2007) in support. In that case, with the plaintiff's consent, the plaintiff's friend purchased airline tickets and booked accommodations for herself and the plaintiff through Expedia. *See id.* at 166. This involved clicking through Expedia's terms and conditions, which included a liability disclaimer. When the plaintiff was ultimately injured on the trip and filed suit against Expedia, the district court enforced the liability disclaimer, reasoning that the plaintiff's friend acted as her agent in booking the flight and accommodations. *Id.* at 165, 175. While not binding on this Court, *Hofer* is nonetheless

5

distinguishable. Airbnb has not presented the Court with any evidence that Plaintiff authorized Ms. Olatunde to book the Property on her behalf. Airbnb also offers no evidence that Ms. Olatunde acted with implied authority and nothing in the record suggests that Airbnb could have reasonably believed that Ms. Olatunde was acting as Plaintiff's agent. *See Peterson*, 2023 IL App (1st) 230356, at *5.

Airbnb finally argues that Plaintiff is bound to the arbitration agreement by the principle of equitable estoppel. ECF No. 16-1 at 18–20. Airbnb contends that "Plaintiff enjoyed the benefits of the agreement between Ms. Olatunde and Airbnb when she traveled to Medellin, Columbia to stay as a guest at the Property that her sister booked using Airbnb's online marketplace. And Plaintiff's claims are inextricably intertwined with Ms. Olatunde's use of Airbnb's online marketplace and related services as she now seeks damages from Airbnb based on injuries she allegedly sustained while staying at the Property...." *Id.* at 20. Airbnb is incorrect. Plaintiff's negligence and Maryland Consumer Protection Act claims "do not rely on the terms to which [Ms. Olatunde] agreed when [s]he booked the [P]roperty." *Peterson*, 2023 IL App (1st) 230356, at *5. Furthermore, Plaintiff only benefitted from Ms. Olatunde's booking as an invitee to Ms. Olatunde's birthday celebration at the Property. *See id.*

Airbnb argues that Plaintiff's Amended Complaint should be dismissed for lack of personal jurisdiction. *See* ECF No. 16-1 at 24–33; *see also* Fed. R. Civ. P. 12(b)(2). When this Court sits in diversity, it applies the personal jurisdiction law of the forum state. *Allcarrier Worldwide Services, Inc. v. United Network Equipment Dealer Ass'n*, 812 F.Supp.2d 676, 680–681 (D.Md. 2011). Maryland's long arm statute is coextensive with the limits of the U.S. Constitution, and "a court's exercise of jurisdiction over a nonresident defendant comports with due process if the defendant has 'minimum contacts' with the forum, such that to require the defendant to defend its interests

in that state 'does not offend traditional notions of fair play and substantial justice.'" *Id.* at 681 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Courts recognize two types of personal jurisdiction: general and specific jurisdiction. *Bristol-Myers Squibb Co. v. Superior Court of California*, 582 U.S. 255, 255–256 (2017). Here, the Court's analysis concerns whether specific personal jurisdiction exists. *See Foresta v. Airbnb, Inc.*, No. 23-1379, 2024 WL 329524, at *3 (E.D. Pa. Jan. 29, 2024).

"Specific personal jurisdiction has two prongs. First, the plaintiff must show purposeful availment, which in this context means 'minimum contacts with the forum state that show the defendant took a deliberate act reaching out to do business in that state.'" *Foresta*, 2024 WL 329524, at *3. The second prong requires "the minimum contacts to 'give rise to —or relate to — plaintiff's claims,' which requires a 'strong relationship among the defendant, the forum, and the litigation.'" *Id.* (quoting *Hepp v. Facebook*, 14 F.4th 204, 207–08 (3d Cir. 2021).

As for the first prong, to determine whether the operators of a website have purposefully availed themselves of a forum state, courts within the Fourth Circuit apply the framework first articulated in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997). *Zippo* "is widely regarded as a leading case on personal jurisdiction in the Internet age." *Allcarrier*, 812 F.Supp.2d at 684; *see also ALS Scan, Inc. v. Digital Service Consultants, Inc.*, 293 F.3d 707, 714 (4th Cir. 2002) (adopting "the Zippo model"). In its analysis of companies that do business over the internet, *Zippo* imagines a scale in which:

> At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction. The middle ground is occupied by interactive

Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

*Zippo*, 952 F.Supp. at 1124.

Starting with the first prong, the Court finds that Airbnb purposely availed itself of doing business in Maryland. *See Foresta*, 2024 WL 329524, at *4. "Here, there is purposeful availment because Airbnb does business through an interactive website that allows [Marylanders] to search for, book, and list properties for rent. In this case, the property was booked by Plaintiff's sister while in Jessup, Maryland. These features, along with the remittance of money between guests and hosts, minus fees, places Airbnb's platform far beyond 'passive' websites that are purely informational and do not provide for specific personal jurisdiction." *Id.* As to the second prong, Plaintiff's claims also arise from or relate to Airbnb's contacts with Maryland. Plaintiff's claims put Airbnb's duties—to the extent to which they exist—to provide guests with safe accommodations at issue. *See id.* Plaintiff's claims regarding alleged injuries sustained on an Airbnb property clearly arise out of the contacts that Airbnb had with Plaintiff. Therefore, the Court finds that it has specific personal jurisdiction over Airbnb, and Airbnb's Motion to Dismiss the Amended Complaint for Lack of Personal Jurisdiction is DENIED.

## CONCLUSION

For the reasons set forth in this Memorandum Opinion, Defendant's Motion (ECF No. 16) is DENIED. A separate Order will follow.

Date: 24 April 2024

_____
A. David Copperthite
United States Magistrate Judge